Michael L. Lessmeier, AK Bar #7910082
LESSMEIER & WINTERS LLC
3000 Vintage Blvd., Suite 100
Juneau, Alaska   99801
Phone (907) 796-4999
Fax     (907) 796-4998
Attorneys for Defendant Ernest Meloche, MD

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JULIA WALKER, individually and as Personal Representative of the ESTATE OF TROY WALLACE,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>DAVID D. HENDERSON, LAURI A. MURRAY, WALTER T. RUD, SHERRI L. DAVIS, EDWIN D. IRIZARRY, LINDA MONTECILLO, and ERNEST MELOCHE, M.D.,<br><br>                    Defendants. | Case No. A05-176 CV  (RRB)<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR INTRA-DISTRICT TRANSFER TO KETCHIKAN** |

## INTRODUCTION

This case was filed by the Plaintiff in Anchorage.  As the following memorandum will set forth in more detail, all relevant events relating to this case occurred in Ketchikan.  None of those events occurred in Anchorage.  None of the parties have ever resided in Anchorage.  Since this case has virtually no connection to Anchorage, and all underlying events occurred in Ketchikan, there is no legitimate reason for the trial to occur in Anchorage.  Dr. Meloche respectfully requests the Court transfer this case to Ketchikan solely for purposes of trial and hold the trial there, since Ketchikan is the place where all underlying events occurred, the place

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)*                                    Page 1 of  10

most convenient to the witnesses, the place where the decedent was residing at the time of his death and the place where Dr. Meloche was and is residing.

## FACTUAL STATEMENT

This case arises from the death of Troy Wallace, who died early on the morning of July 24, 2004, while incarcerated at the Ketchikan Correctional Center in Ketchikan, Alaska. The Complaint alleges that various Ketchikan Correctional Center employees deliberately and/or negligently disregarded the medical needs of Mr. Wallace. The Amended Complaint contains a similar allegation against Dr. Meloche, the contract position for Ketchikan Correctional Center at the time. It is not believed there is any dispute as to the following facts:

1.    On or about July 20, 2004, Mr. Wallace committed himself to the Ketchikan Correctional Center to serve a 10-day jail sentence.[1]

2.    Mr. Wallace had previously requested a postponement of his jail time, because he was "moving over the weekend. Not leaving Ketchikan."[2] In this request, Mr. Wallace gave his mailing address as P.O. Box 23616, Ketchikan, Alaska, and his phone number as 225-2361, a Ketchikan phone number. Mr. Wallace's booking record likewise contains the same Ketchikan mailing address and phone number.[3]

3.    On July 21, 2006, Mr. Wallace was given a medical screening by Linda Monticello, a registered nurse employed by the Ketchikan Correctional Center.

4.    On July 22, 2006, Mr. Wallace was evaluated for alcohol withdrawal by Nurse Montecillo, who called Dr. Meloche to initiate the Department of Corrections

---

[1] Plaintiff's Amended Complaint, paragraph 16.

[2] A true and accurate copy of the July 15, 2004, Request for Deferral of Jail Time filed by Mr. Wallace as produced by the State of Alaska is attached as Exhibit A.

[3] A true and accurate copy of the July 20, 2004, Booking Record for Mr. Wallace as produced by the State of Alaska is attached as Exhibit B.

Alcohol Withdrawal Protocol. This is the only contact Nurse Montecillo had with Dr. Meloche before Mr. Wallace died.

5.    On July 23, 2004, at approximately 9:30 a.m., Nurse Montecillo examined Mr. Wallace and thought he was responding appropriately to the alcohol withdrawal protocol.

6.    Mr. Wallace died sometime shortly after 1:00 a.m. on July 24, 2004.

7.    According to the Department of Corrections records, Correctional Officers David Henderson, Lauri Murray, Walter Rud and Shari Davis were on duty from 1800 hours on July 23, 2004, to 0600 hours on July 24, 2004, the span encompassing the time of Mr. Wallace's death. According to the State's attorney, each still works at the Ketchikan Correctional Center, except for Lauri Murray.[4]

8.    Another Correctional Officer, Ed Irizarry, was also on duty at the time of Mr. Wallace's death.[5] It is believed that Mr. Irizarry no longer works for the Department of Corrections, but still resides in Ketchikan.

9.    Each of the above-referenced Correctional Officers was a named defendant, as was Nurse Montecillo. Each has been dismissed pursuant to a settlement agreement between the State of Alaska, the Correctional Center employees and the Plaintiff.[6] As part of the settlement reached with the State of Alaska, the plaintiff released all claims against the State of Alaska and/or any of the State's employees.[7]

_____

[4] A true and accurate copy of the Duty Shift Roster produced by the State of Alaska is submitted herewith as Exhibit C.

[5] *Id.*

[6] A true and accurate copy of the release signed by the plaintiff is filed herewith as Exhibit D.

[7] *Id.*

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)*                    Page 3 of  10

10.  Correctional Officers Audie Ellis, Walter Headley, Ed Hendricks, Holly Cloudy, Kevin Worley and Jason Kern were on duty between 0600 hours and 1800 hours on July 23, 2004, according to records produced by the State of Alaska.[8] According to the State's attorney all are still employed with the State in Ketchikan.

11.  Other Correctional Officers on duty during the time of Mr. Wallace's incarceration according to the State of Alaska records include James Campbell, Patrick Cassin, Holly Cloudy, Kenneth Comstock, David Gregory, Anthony Hahn, Gerald Holderman, and Michael Ross. [9] According to the State's attorney, all are still employed with the State in Ketchikan, except for Mr. Campbell and Mr. Cassin.

12.  Linda Montecillo, a long-time resident of Ketchikan, is the Ketchikan Correctional Center registered nurse who was on duty or call during the time of Mr. Wallace's incarceration.

13.  Dr. Ernest Meloche is a long-time Ketchikan physician who at the time of Mr. Wallace's incarceration was the contract physician for the Ketchikan Correctional Center.

14.  The Plaintiff sued Nurse Montecillo and the individual Correctional Officers identified in paragraphs 7 and 8 above, alleging each violated 42 USC §1983 and that each is negligent under Alaska law.  The Plaintiff subsequently amended her complaint to add Dr. Meloche as a defendant.

15.  In her witness list, the Plaintiff has listed Julia Walker, the Plaintiff's mother, and Josh Walker, both of whom are evidently residents of Washington State. The plaintiff has also listed Jennie Simpson, Linda Montecillo and Dr. Meloche, all residents of Ketchikan.  In addition, the Plaintiff has listed four out-of-state expert witnesses.

---

[8]  Exhibit C.

[9]  *Id.*

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)*                                    Page 4 of  10

16.  Dr. Meloche has listed as witnesses the Correctional Officers identified above, Nurse Montecillo, Allen Baily the superintendent of the Ketchikan Correctional Center, Dr. Klingler, the State of Alaska Deputy Medical Examiner in 2004, and any State of Alaska employees familiar with the alcohol withdrawal policy utilized by the Department of Corrections here.  In addition, Dr. Meloche has listed several expert witnesses from out of state and an expert from Juneau.

17.  None of the parties have ever lived in or have any connection to Anchorage, the place where the Plaintiff chose to initiate this action.

18.    Plaintiff's counsel declined to stipulate that, subject to the discretion of the Court, trial be held in Ketchikan.[10]

## LEGAL ARGUMENT

Local Rule 3.3(d) provides "[t]he court may decide on motion of a party or its own motion whether the action should be transferred to another location for case management or for trial."  The issue of such a transfer has been addressed several times by then District Court Judge Kleinfeld. In *United States v. Rybachek*, 643 F. Supp. 1086 (D. Alaska 1986), Judge Kleinfeld analyzed the issue of whether a case should be transferred from Anchorage, where it was filed, to Fairbanks, the court location closest to where the underlying events occurred.  Judge Kleinfeld concluded the court had the discretion to order an action tried at any proper location within the district, regardless of where the action was filed:

> Both parties have argued this motion for change of **venue** as though it were a 28 USC §1404(a) motion.  It is not.  That section applies only to motions for transfer to another **district** or **division**.  The statute for Alaska provides:
> Alaska constitutes one judicial **district**.  Court shall be held at Anchorage, Fairbanks, Juneau, Ketchikan, and Nome. 28 USC §21A

---

[10]  The undersigned certifies that he asked Plaintiff's counsel to so stipulate and that Plaintiff's counsel declined.

The statute, unlike those for a number of other **districts**, does not subdivide the **district** into **divisions**.

The appropriate section is 1404 (c). Subsection (c) applies to transfers within the District of Alaska.

A district court many order any civil action to be tried at any place within the division in which it is pending.

The reference to 'division' is confusing for districts without statutory divisions. But the Ninth Circuit has long sense dissipated any confusion by its decision in <u>El Ranco, Inc., v. First National Bank, 406 F.2d 1205 (9th Circuit 1969), cert. den. 396 US 875, 90 S. Ct 150, 154, 24 Lawyers Edition 2d 133</u>. That decision held that in the District of Nevada, with statutory language materially identical to the wording for Alaska, without divisions, the court had discretion to order that an action filed in Las Vegas be tried in Carson City.[11]

Judge Kleinfeld there found the convenience of the witnesses and the burden placed on the defendants justified changing the place of trial from Anchorage where the case was filed, to Fairbanks.

In another case decided that same year, Judge Kleinfeld again transferred the trial of a case filed in Anchorage to Fairbanks because Fairbanks was the court location closest to where the underlying events occurred, closest to where the defendant municipality, had its offices, files and personnel, and closest to where most of the witnesses were from.[12]

A number of courts from other jurisdictions have addressed the same issue of intra-district transfer for purposes of trial. Such a case was *Spires v. Hospital*

---

[11] *Rybachek*, 643 F Supp. at 1087. (Emphasis and format as in original)

[12] *Matthews v. North Slope Borough*, 646 F. Supp. 943, 945-6 (D. Alaska 1986).

*Corporation of America.*[13]  *Spires* was decided under D. Kansas Rule 40.2, which is similar to Alaska Local Rule 3.3(d).  In applying this Rule, the *Spires* court noted that courts of that district generally look to the same factors relevant to a motion for change of venue under 28 USC §1404(a).  That statute provides that an action may be transferred for the convenience of the parties and witnesses in the interest of justice.  The *Spires* court explained that a party seeking transfer has the burden of proving that the existing forum is inconvenient and that generally unless the balance weighs strongly in favor of transfer, the Plaintiff's choice of forum should not be disturbed.  The *Spires* court went on to explain that when the plaintiff does not reside in the chosen forum, "the rationale for allowing the plaintiff to dictate the forum evaporates."[14]  The court there transferred the trial to Wichita from Kansas City because the underlying events occurred in Wichita, most of the witnesses, parties and attorneys resided there and there was no connection of the case to Kansas City, where it was filed.

While the Ninth Circuit has yet to enumerate the factors that should be addressed when considering a motion for intra-district transfer such as the present one, there is no good reason for the trial of this case to occur in Anchorage.  None of the underlying events occurred there, none of the parties ever resided there, and none of the witnesses involved in the underlying events reside there.

Of the witnesses that have been listed by both parties, almost all of the lay

---

[13]  2006 Westlaw 1642701 (D. Kansas).

[14]  *Id.* at Slip Copy page 2.  In the change of venue context, the Ninth Circuit has likewise said that "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration."  *Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th. Cir., 1968).  While *Pence* is a venue case and the issues are somewhat different, this rationale is directly applicable here, for Anchorage has no connection to the underlying facts or the parties.

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)*                                    Page 7 of  10

witnesses still work for the Ketchikan Correctional Center.  Of those that don't, it is believed that Lauri Murray and James Campbell still live in Ketchikan, as they still have Ketchikan phone numbers.  It appears that Mr. Cassin had no contact with Mr. Wallace, as he was on sick leave when he was scheduled to work during the time of Mr. Wallace's incarceration.[15]    Dr. Klingler, the deputy medical examiner who performed the autopsy, was listed telephonically and is no longer employed by the State of Alaska.[16]  Linda Montecillo, the witness who had the most interaction with Mr. Wallace, lives and works in Ketchikan, as does Allan Baily, the superintendent of the Ketchikan Correctional Center.  The correctional officers who had interaction with Mr. Wallace during the time of his incarceration, live and work in Ketchikan.[17] Dr. Meloche lives and works in Ketchikan.  It would be a significant burden for these factual witnesses and a significant expense to the defense to require each to travel to Anchorage to testify.[18]  It would be a significant burden and expense to Dr. Meloche to have to literally move to Anchorage for the period of time it will take to try this case.

With respect to the expert witnesses listed and the few witnesses who do not reside in Ketchikan, Ketchikan is much closer to Seattle and thus a much shorter flying distance from Seattle, which is where all of the other witnesses will be flying

---

[15]  Exhibit C.

[16]  Counsel just learned that Dr. Klingler has relocated to Philadelphia.

[17]  It will be necessary for any jury to evaluate the conduct of the released State of Alaska employees and the State of Alaska itself for allocation of fault purposes according to AS. 9.17.080(a)(2).

[18]  The lowest round-trip airfare without advance purchase (often not possible or practical during trial) from Ketchikan to Anchorage is $683.10 according to Alaska Airlines' website.  Exhibit E.  Many of the flight choices are routed through Seattle.  Under the best of circumstances, it takes a day of travel to get from Ketchikan to Anchorage and a day to return.

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)*                                              Page 8 of  10

through.  Since these witnesses have no connection to either Anchorage or Ketchikan, it is hard to see how it would be at all inconvenient for them to testify in Ketchikan, where the underlying events occurred.

In *Matthews*, Judge Kleinfeld ruled that "justice can best be served and the least inconvenience imposed on parties and witnesses by trying this case in Fairbanks, because of its greater proximity to Barrow.[19]  Justice can likewise best be served by holding the trial of this case in Ketchikan, where all of the underlying events occurred, the deceased was living at the time, Dr. Meloche was and is living, and where the witnesses with knowledge of the underlying liability facts live and/or work. Ketchikan is obviously the community most interested in the resolution of this dispute and just as clearly, it is hard to see why Anchorage jurors should be required to decide a case that has no connection to their community.  There are substantial reasons to hold the trial of this case in Ketchikan, and no valid reason for the trial to be held in Anchorage.

## CONCLUSION

Dr. Meloche respectfully requests the Court exercise its discretion in favor of holding this trial in Ketchikan, which is where all of the underlying events occurred, where Mr. Wallace and Dr. Meloche were residing and the place most convenient to the witnesses who will likely testify.

---

[19] *Matthews*, 646 at Supp. at 945.

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)*                                    Page 9 of  10

DATED this 16th day of November , 2006, at Juneau, Alaska.

LESSMEIER & WINTERS
Attorneys for Defendant Dr. Meloche

By:_____/S/_____
Michael L. Lessmeier, AK Bar 7910082

The undersigned hereby certifies that on the 16th of November, 2006, a copy of the foregoing document was electronically served to the following attorneys of record:

Edwin S. Budge, Esq.
Budge & Heipt, PLLC
705  2nd Avenue, #910
Seattle, WA  98104

_____/S/_____
0034-078 MemoMotionTransferKtkn.wpd

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)*                                    Page 10 of  10