Michael L. Lessmeier, AK Bar #7910082
LESSMEIER & WINTERS LLC
3000 Vintage Blvd., Suite 100
Juneau, Alaska  99801
Phone (907) 796-4999
Fax    (907) 796-4998
Attorneys for Defendant Ernest Meloche, MD

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JULIA WALKER, individually and as Personal Representative of the ESTATE OF TROY WALLACE,<br><br>           Plaintiffs,<br><br>     vs.<br><br>DAVID D. HENDERSON, LAURI A. MURRAY, WALTER T. RUD, SHERRI L. DAVIS, EDWIN D. IRIZARRY, LINDA MONTECILLO, and ERNEST MELOCHE, M.D.,<br><br>           Defendants. | Case No. A05-176 CV  (RRB)<br><br>**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR INTRA-DISTRICT TRANSFER TO KETCHIKAN** |

## INTRODUCTION

Neither the facts that form the basis of the Motion for Intra-District Transfer or the law set forth in that Motion have been disputed by the Plaintiff.  Instead, the Plaintiff argues that since two of the possible defense witnesses are from Anchorage, convenience does not justify holding the trial in Ketchikan.  But there is no dispute that all relevant events relating to this case occurred in Ketchikan.  None of those events occurred in Anchorage.  None of the parties have ever resided in Anchorage.  Since this case has no virtually no connection to Anchorage, and all underlying events occurred in Ketchikan, there is no legitimate reason for the trial to occur in Anchorage. The Plaintiff next argues this Motion should be denied because the

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)*                                                                                    Page 1 of  14

Plaintiff cannot get a fair trial in Ketchikan, an argument that should be dismissed quickly for it is based on no legal authority and is contrary to existing authority. This argument is also based entirely on the supposition that a fair jury cannot be found in Ketchikan, a supposition that is legally and logically unsupportable. Dr. Meloche respectfully requests the Court transfer this case to Ketchikan solely for purposes of trial and hold the trial there, since Ketchikan is the place where all underlying events occurred, the place most convenient to the witnesses, the place where the decedent was residing at the time of his death and the place where Dr. Meloche was and is residing.

### FACTUAL ISSUES

None of the facts set forth in the Dr. Meloche's Opening Memorandum have been disputed by the Plaintiff. Many of the factual allegations contained in the Plaintiff's Opposition are merely assertions, unsupported by any factual reference, all of which are disputed. The following assertions contained in the Plaintiff's response are disputed:

1. The discussion of Mr. Wallace's symptoms and of alcohol withdrawal set forth at pages 3-4 contains nothing more than unsupported assertions, which are disputed. While it is correct that Mr. Wallace went to the Ketchikan Correctional Center on July 20, 2004, to serve a 10-day jail sentence and that he received a pre-remand and post-remand screening on July 21, 2004, the description set forth is argumentative and is disputed.

2. There is no dispute that Nurse Montecillo examined Mr. Wallace on July 22, 2004, and called Dr. Meloche to institute the Department of Corrections Alcohol Withdrawal Protocol.[1] The Plaintiff's description of this is not referenced to any factual citation and is disputed.

---

[1] A true and accurate copy of Nurse Montecillo's notes are attached as Exhibit F.

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV (RRB)*                                Page 2 of 14

3.  At page 5, the Plaintiff claims that Dr. Meloche authorized the nurse to provide "vitamins and medicine to Mr. Wallace." This mis-characterizes what occurred. Dr. Meloche authorized Nurse Montecillo to institute the Department of Corrections Alcohol Withdrawal Guidelines.[2] This is the only time Nurse Montecillo called or attempted to call Dr. Meloche regarding Mr. Wallace until after his death.[3] As the Plaintiff concedes, this is the only time anyone at the jail called Dr. Meloche.[4]

4.  At page 5, the Plaintiff claims that Dr. Meloche authorized Mr. Wallace to stay in jail without medical monitoring. This statement is without citation and is at best misleading. Mr. Wallace was in a camera cell that was monitored 24 hours per day by corrections officers, who had the ability to call Department of Corrections medical providers at any time.[5]

5.  At page 5, the Plaintiff claims that Mr. Wallace's condition worsened after he was placed on the Alcohol Withdrawal Protocol. Again the statement is without citation and is disputed. According to Nurse Montecillo, who examined Mr. Wallace on July 23, 2004, at 9:30 a.m., Mr. Wallace was responding to the protocol and she thought his condition had improved as his vital signs had returned to normal.[6] She saw no need to call Dr. Meloche again and did not do so.[7]

6.  At page 5, Plaintiff claims that Mr. Wallace's condition "worsened

---

[2] Montecillo deposition at 140. (The Montecillo deposition excerpts are attached as Exhibit G.) A true and accurate copy of the Department of Corrections Alcohol Withdrawal Guideline for Mr. Wallace is filed herewith as Exhibit H.

[3] Montecillo deposition at 103-4.

[4] Opposition at page 9.

[5] Montecillo deposition at 102, 141.

[6] *Id*. at 144-5.

[7] *Id*. at 145.

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)*                                    Page 3 of  14

still" in the afternoon and evening of July 23. This is without factual citation and there is no record to support this. Nurse Montecillo saw Mr. Wallace at approximate 2:30 p.m. and thought there was no need to call Dr. Meloche.[8] She called the Ketchikan Correctional Center at approximately 9:30 p.m. and was not told of any abnormal behavior on the part of Mr. Wallace.[9] The remaining description of Mr. Wallace is likewise without citation and is disputed.

7. At page 5, Plaintiff references "inadequate treatment" ordered by Dr. Meloche. This statement is but another one of many unsupported allegations made by the Plaintiff and should be given no weight by the Court.

8. At page 6, Plaintiff states that Dr. Meloche has personally provided medical care to 8% of the entire population of the Ketchikan Gateway Borough. This statement is an unsupported allegation. It assumes that every time Dr. Meloche has had a patient visit, that visit involved a different Ketchikan resident who will still be a Ketchikan resident when this case is tried – as opposed to a tourist or someone who has left Ketchikan. It assumes the entire population of Ketchikan has remained static. It also assumes that every such person is biased. There is no basis for such assumptions.[10]

9. At page 7, Plaintiff claims that many potential Ketchikan jurors will personally know Dr. Meloche and that "every" potential juror is likely to have a family member or friend who knows Dr. Meloche socially or has received medical

---

[8] *Id.*

[9] *Id.* at 145-6.

[10] In October of 2006, a jury was selected in Ketchikan in a case brought by a *pro se* inmate against Dr. Meloche. This jury of 12 plus 1 alternate was selected without difficulty in several hours. Exhibit I (Affidavit of Michael L. Lessmeier, attached hereto). This experience itself disproves the Plaintiff's claim that the court should presume that an impartial jury cannot be empaneled in Ketchikan.

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)*                                                                 Page 4 of  14

care from him. These claims are merely speculation.

10. At page 8, Plaintiff claims that it is "probable" that many jurors will know Ms. Montecillo or members of her family. Again, this claim is simply speculation.

11. At page 9, Plaintiff states that according to Dr. Meloche's witness list, Dr. Klingler, who performed the autopsy on Mr. Wallace, is a "resident of *Anchorage.*" Dr. Klingler was listed at her business address in Anchorage as a telephonic witness. As indicated in Dr. Meloche's opening memorandum, Dr. Klingler is no longer employed by the State of Alaska and has relocated to Philadelphia, something the Plaintiff does not dispute.[11]

12. At page 10, Plaintiff argues that it would be inconvenient for potential State of Alaska employees who may have knowledge of the Alcohol Withdrawal Protocol to travel to Ketchikan to testify. These witnesses (Dr. Luban and Dr. Bingham) have not been identified as having any knowledge of Mr. Wallace. They were listed only because they may have knowledge of the State's Alcohol Withdrawal Guideline. If called, any expense of their travel will be born by Dr. Meloche. No inconvenience to the Plaintiff has been claimed.

13. At page 10, the Plaintiff also argues that Anchorage is at least equally convenient to defense counsel and the defense experts as is Ketchikan. There is no factual basis for this argument since Anchorage is more than twice the distance from Seattle (1448 miles) than is Ketchikan (679 miles). Anchorage is likewise more than twice the distance from Juneau (571 miles) than is Ketchikan (235 miles).

**LEGAL ARGUMENT**

**1. <u>There is No Reasonable Dispute Regarding the Motion For Intra-</u>**

---

[11] Attached as Exhibit J is the Affidavit of Jennifer M. Christensen so indicating.

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV (RRB)*                                               Page 5 of 14

**District Transfer Facts**.

There is no reasonable dispute here regarding the factors that form the basis of Dr. Meloche's Motion for Intra-District transfer. Mr. Wallace was living in Ketchikan at the time of his death.[12] Dr. Meloche is a longtime resident of Ketchikan.[13] None of the parties (including the personal representative) have any connection to Anchorage. All relevant events relating to Mr. Wallace's death occurred in Ketchikan. All factual witnesses having any knowledge of Mr. Wallace's death live in and work in Ketchikan.[14]

While the Plaintiff argues it will not be necessary for all of the correctional officers to testify, and that accordingly, it will be just as convenient to the parties for trial to occur in Anchorage, the facts show that trial in Anchorage will be anything but convenient. Dr. Meloche agrees it is likely that not all of the correctional officers will need to testify, but it is only from the testimony of the correctional officers and Nurse Montecillo that a jury can learn what occurred during the time of Mr. Wallace's incarceration. Five of the officers listed were on duty when Mr. Wallace

---

[12] The Plaintiff agrees Mr. Wallace was living in Ketchikan at the time of his death (Opposition at page 11), but without any factual citation asserts that Mr. Wallace was a resident of Washington. The later allegation is disputed.

[13] As Plaintiff concedes at page 6 of her Opposition, Dr. Meloche has lived and worked in Ketchikan since 1989.

[14] While the Plaintiff does not dispute this, she complains that the addresses for the correctional officers given are their work address, not their residence address. Since these witnesses continue to be represented by counsel through their employment, their place of employment was used. Their continued employment in Ketchikan was confirmed through their counsel. Exhibit J.

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)*                                                  Page 6 of  14

died.[15]  Each of these officers was a named defendant.[16]  Six other officers were on duty during the shift that ended at 1800 hours on 23 July 2006, approximately 7 hours before Mr. Wallace died.[17]  Since Mr. Wallace was in a camera monitored cell, he was subject to continuous observation by the correctional officers.  The correctional officers monitored Mr. Wallace, took him to the shower, took him for examinations by Nurse Montecillo, administered medication to him, provided food and fluids to him and interacted with Nurse Montecillo regarding his medication and condition.[18]  If the Opposition of the Plaintiff demonstrates anything, it is that the Plaintiff's case against the State Defendants was based on the actions of those Defendants and Nurse Montecillo throughout the period of Mr. Wallace's incarceration.  The Plaintiff's case against Dr. Meloche is based on what occurred when and after Dr. Meloche was called on the afternoon of 22 July 2004.  What occurred during these time frames can only be determined by the testimony of the officers and Nurse Montecillo, who had the responsibility to implement the State's Alcohol Withdrawal Protocol.   There is thus no question that the testimony of Nurse Montecillo and the correctional officers is necessary and important to the issues of liability.

Correctional officer and Nurse Montecillo testimony is both necessary and important to the issue of allocation of fault as well.  The Plaintiff initially sued just the correctional officers and Nurse Montecillo, not Dr. Meloche.  The Plaintiff subsequently settled her claims with the State of Alaska and all of its employees.  The

---

[15] Exhibit C to Memorandum in Support of Motion for Intra-District Transfer.

[16]It is more than a little ironic that after suing five of the correctional officers and then settling with the State and all of its employees, the Plaintiff would now claim these same correctional officers have no relevant knowledge.

[17]*Id.*

[18]Montecillo deposition at 86-92, 114, 146, 149, 150; Exhibits F and G.

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)*                                              Page 7 of  14

Plaintiff does not dispute that fault must be allocated to the released parties pursuant to AS 9.17.080(a)(2). Just as it is hard to see how the underlying facts can be shown to the jury without the testimony of the nurse and correctional officers who have knowledge of those facts, it is hard to see how the jury can allocate fault without that testimony. There can be no question that nurse and correctional officer testimony is thus necessary to the allocation of fault issues as well.

The Plaintiff has not disputed that it would be both expensive and disruptive for Ketchikan witnesses to have to travel to Anchorage to testify. Doing so would likely require each to be away from their home, family and job for at least 3 days. While the Plaintiff argues Anchorage would be no more difficult than Ketchikan for out-of-state witnesses, this argument is plainly wrong, for Anchorage is more than twice the flying distance from Seattle (1448 miles) than is Ketchikan (679 miles). The same is true of travel from Juneau: Anchorage is more than twice the distance than is Ketchikan (571 miles vs. 235 miles).

The Plaintiff's final convenience argument is that 3 of the witnesses listed by Dr. Meloche are from Anchorage. One of those witnesses is Dr. Klingler, the Deputy Medical Examiner who performed the autopsy. As set forth in Dr. Meloche's opening memorandum, Dr. Klingler is no longer employed by the State and has relocated to Philadelphia, something the Plaintiff has chosen to ignore. The other 2 witnesses are State employees who have not been identified as having any knowledge specific to Mr. Wallace, but who may have knowledge of the State's alcohol withdrawal protocol. These employees are Dr. Bingham, the Medical Director for the Department of Corrections, and Dr. Luban, the Assistant Medical Director. It is doubtful whether the testimony of either of these witnesses will be necessary, as any testimony regarding the alcohol withdrawal protocol will likely come from Allen Bailey, the long-time Ketchikan Correctional Center Superintendent. But even if the testimony of both ultimately is necessary, any cost of their travel will be born by Dr.

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)*                                                                 Page 8 of  14

Meloche, not the Plaintiff, who will not in any way be inconvenienced.

Dr. Meloche showed in his opening memorandum that this case has no connection to Anchorage and that Anchorage is an inconvenient forum by any measure for him, for the lay witnesses and for any expert witnesses. He showed that Anchorage is a community neither the Plaintiff nor Mr. Wallace has ever had any connection to. The Plaintiff has now had the opportunity to show the contrary, but has failed to do so. There is no issue of convenience that justifies holding this trial anywhere but Ketchikan.

Aside from the issue of convenience, there is yet another reason to hold this trial in Ketchikan, for as the cases cited in Dr. Meloche's opening memorandum show, when neither party has any connection to the forum of filing (as is the case here) there is a preference for holding trial in the location closest to where the underlying events occurred. The Supreme Court has long said "[t]here is a local interest in having localized controversies decided at home."[19] While not binding, the Alaska Supreme Court has repeatedly said that absent unusual circumstances, cases should be resolved in the community closest to where the underlying facts arose.[20] This policy too dictates that this case should be resolved in Ketchikan, the community in which it arose.[21]

---

[19] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062-62 (1947).

[20] In *Alvarado v. State*, 486 P.2d 891, 906 (Alaska 1971), the Alaska Supreme Court stated that "(w)hen a large segment of the population lives in towns and villages scattered throughout the reaches of the state, we cannot afford to succumb to the temptation of convenience by allowing the machinery of justice to become inflexibly entrenched within the enclaves of our major cities."

[21] While the Plaintiff makes a brief argument at Page 11 of her Opposition that citizens of Anchorage would be just as interested in the resolution of this case as would be citizens in Ketchikan, this argument is without merit, for the argument the Plaintiff makes could be made any time an unexpected event takes the life of an Alaskan. What the courts

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV (RRB)*                                                                 Page 9 of 14

### 2. **The Plaintiff's Venue Argument Should Not Prevent Transfer**.

The Plaintiff's other argument asks the court to deny transfer because she claims she cannot get a fair trial in Ketchikan. But the issue of whether a party can get a fair trial in a particular location is a venue issue and should be determined in accord with the numerous cases that have addressed such issues. These cases hold that absent very unusual circumstances, such as extensive pretrial publicity, the proper way to determine if a fair jury can be empaneled is through the voir dire process in the proper forum.[22]

Plaintiff's brief argument, which is not supported by any authority, is legally wrong in at least two important respects. First, the Plaintiff's argument *presumes* that contact with a party, no matter how recent and no matter how significant, is the equivalent of bias. But that is not the law, for the test has long been one of "a partiality that could not be laid aside."[23] The Supreme Court in *Murphy* held there is no due process violation, even if jurors are aware of the facts and issues involved in the case, so long as the juror can lay aside his or her impression or opinion and decide

---

have instead looked to in this context is a "particular" interest in the parties or the subject matter of the controversy. *Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th. Cir., 1968). This particular interest is lacking here.

[22] To the knowledge of the undersigned, the 9th Circuit has not addressed the issue of whether a different standard should apply in the context of a intra-district transfer motion. When confronted with a similar issue, the Alaska Supreme Court said: "plaintiffs must follow the standard procedure; they must commence suit in the proper Rule 3 venue, and then, if that forum is inconvenient, move for a change of venue under AS 22.10.040. By adopting this policy, we ensure that the superior court in the proper venue, rather than one in the venue of plaintiff's choosing, makes the initial determination as to which forum is convenient. This rule precludes plaintiffs from selecting a forum they believe is convenient without regard to Civil Rule 3." *Ketchikan General Hosp. v. Dunnagan,* 757 P.2d 57, 59 (Alaska 1988).

[23] *Murphy v. Florida*, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589, 595 (1975).

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)*                                           Page 10 of  14

the case on the evidence presented.[24]  This rationale is directly applicable here.  The question is not whether a potential juror may have had some contact with Dr. Meloche or a witness, but whether that contact is such that the juror is partial and cannot set that partiality aside.

The Plaintiff's argument is flawed in a second fundamental way, for she doesn't just ask the court to *presume* bias, rather she asks the court to then *presume* (before any attempt to select a jury) the bias is so prevalent in the Ketchikan community that it would not be possible for an impartial jury to be empaneled.  But it has repeatedly been held that except in the rarest of cases, voir dire is the way to determine whether an impartial jury can be empaneled in the community where the underlying events occurred:

> Prudence dictates that courts answering this question [whether the potential for substantial emotional involvement, adversely affecting impartiality is inherent] should hesitate before formulating categories of relationships which bar jurors from serving in certain types of trials.  Only in 'extreme' or 'extraordinary' cases should bias be presumed.  Instead of formal categorization, the Supreme Court has emphasized the existence of safeguards against actual bias.  In most situations, voir dire, 'the method we have relied on since the beginning,' should suffice to identify juror bias.[25]

The 9th Circuit has elsewhere said:

> A defendant must establish either presumed prejudice or actual prejudice to warrant a change in venue. "Prejudice is presumed when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime."  While such extraordinary publicity obviates the need to prove actual prejudice, "[t]he presumed prejudice principle is rarely applicable."  It is only applicable where "the pretrial publicity

---

[24] *Id*. at 421 U.S. at 798-99, 95 S.Ct. at 2036, 44 L.Ed.2d at 594.

[25] *Tinsley v. Borg*, 895 F.2d 520, 527-8 (9th Cir. 1990) (citations omitted) *cert. denied* 498 US 1091, 111 S. Ct. 974, 112 L. Ed. 2d 1059.

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)*                                             Page 11 of  14

was so extensive or the examination of the entire panel revealed such prejudice that a court could not believe the answers of the jurors and would be compelled to find bias or preformed opinion as a matter of law." "When a Rule 21(a) motion is made 'the ultimate question is whether it is possible to select a fair and impartial jury, and the proper occasion for such a determination is upon the voir dire examination.'"[26]

The Plaintiff has nowhere argued this is a case of extraordinary pretrial publicity.  She has cited no authority that the court should presume bias that cannot be set aside in any case, let alone a case like this, which does not involve a claim of extraordinary pretrial publicity.  If the Plaintiff is going to argue that venue would be improper in Ketchikan because a Ketchikan venue is biased as she has, that issue should be determined by the law of governing a change of venue motion.  That law requires the Plaintiff to show, through the voir dire process, that an impartial jury cannot be empaneled.

Nor is there any basis in Alaska experience for the presumption the Plaintiff asks the court to make.  Cases involving issues with far more notoriety have been tried to juries in much smaller communities throughout Alaska for years.  Commenting on this experience in a Kotzebue case, the Alaska Supreme Court noted that:

> There are now resident superior court judges in three Alaskan cities where Eskimos are the predominant ethnic group.  Jury trials have for many years been conducted in these cities.  There has emerged from these cases no pattern of jurors being unwilling to follow the court's instructions.  To be sure, general community attitudes in these cities may well be different from those which might prevail elsewhere, but such differences can better justify retaining rather than changing venue.[27]

---

[26] *U.S. v. Rewald,* 889 F.2d 836, 863 (9th Cir. 1989) (citations omitted).

[27] *Wilson v. City of Kotzebue*, 627 P.2d 623, 635-6 (Alaska 1981).

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan
Walker, Estate of Wallace v. Henderson et al.;
Case No. A05-176 CV (RRB)*                                                                   Page 12 of 14

The court has affirmed the denial of similar attempts to change venue from Southeast Alaska communities.[28] While these cases are not binding on this court, they show that cases are regularly tried to juries in communities throughout Alaska, communities which are much smaller than Ketchikan. These cases also show there is no reason based on experience to presume prejudice in any Alaskan community, absent very rare circumstances. Such circumstances are not present here.

### CONCLUSION

Dr. Meloche respectfully requests the Court exercise its discretion in favor of holding this trial in Ketchikan, which is where all of the underlying events occurred, where Mr. Wallace and Dr. Meloche were residing, and the place most convenient to the parties and witnesses who will likely testify.

DATED this 27th day of November , 2006, at Juneau, Alaska.

```
                              LESSMEIER & WINTERS
                              Attorneys for Defendant Dr. Meloche
                         By:        /S/
                              Michael L. Lessmeier, AK Bar 7910082
```

---

[28] *See Sever v. Alaska Pulp Corp.,* 931 P.2d 354, 360-1 (Alaska 1996) *rehearing denied* (Nov. 20, 1996) and *Maier v. City of Ketchikan,* 403 P.2d 34, 39-40 (Alaska 1965)(overruled on other grounds by *Johnson v City*, 583 P.2d 181, 187 (Alaska 1978).

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV  (RRB)* Page 13 of 14

The undersigned hereby certifies that on the 27th of November, 2006, a copy of the foregoing document was electronically, served to the following attorneys of record:

Edwin S. Budge, Esq.
Budge & Heipt, PLLC
705 2nd Avenue, #910
Seattle, WA 98104

    /S/
Michael L. Lessmeier
0034-078 ReplyOppMemoMotionTransferKtkn.wpd

*Memorandum in Support of Motion for Intra-District Transfer to Ketchikan*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV (RRB)*     Page 14 of 14