Michael L. Lessmeier, AK Bar #7910082
LESSMEIER & WINTERS LLC
3000 Vintage Blvd., Suite 100
Juneau, Alaska 99801
Phone (907) 796-4999
Fax    (907) 796-4998
Attorneys for Defendant Ernest Meloche, MD

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JULIA WALKER, individually and as Personal Representative of the ESTATE OF TROY WALLACE,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID D. HENDERSON, LAURI A. MURRAY, WALTER T. RUD, SHERRI L. DAVIS, EDWIN D. IRIZARRY, LINDA MONTECILLO, and ERNEST MELOCHE, M.D.,<br><br>Defendants. | Case No. A05-176 CV (RRB)<br><br>**AFFIDAVIT OF**<br>**ERNEST MELOCHE** |

STATE OF ALASKA       )
                                       ) SS
FIRST JUDICIAL DISTRICT )

I, Ernest Meloche, M.D., having been duly sworn, hereby state as follows:

1.  I am a named defendant in the above action.

2.  I received my medical degree from the University of Southern California in 1976. I have worked full time as an emergency room physician for the past 26 years. I became board certified in emergency medicine in 1984, and was re-certified in 1994 and again in 2003.

3.  I have been licensed to practice medicine in Alaska since 1989 and have worked as an emergency room physician at the Ketchikan General Hospital full time

*Affidavit of Dr. Meloche*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV (RRB)*

Exhibit C
page 1 of 8

Page 1 of 8

since June 1989.

4. In addition to my full-time position as an emergency room physician, in 1994 I began working as a contract physician on a part-time basis for the Ketchikan Correctional Center. The Ketchikan Correctional Center is a State of Alaska Department of Corrections facility.

5. In the 30 years I have been practicing medicine, I estimate I have provided treatment to well over 1000 individuals in varying stages of alcohol withdrawal.

6. On the afternoon of 22 July 2004 I was contacted telephonically by Linda Montecillo, a registered nurse at the Ketchikan Correctional Center, regarding inmate Troy Wallace. At the time I was called I was working a 24-hour shift at the Ketchikan General Hospital Emergency Room. My shift ran from 8:00 a.m. on 22 July 2004 to 8:00 a.m. on 23 July 2004. After my shift ended, I would typically spend two to four hours completing medical charts.

7. Mrs. Montecillo is a registered nurse who has been employed at the Ketchikan Correctional Center since before I became the contract physician there. As of July of 2004, I had worked with Mrs. Montecillo in my capacity as the contract physician at Ketchikan Correctional Center for approximately 10 years. During this period of time I estimate that the Correctional Center nurses and I managed without complications well over 100 inmates in alcohol withdrawal. Mrs. Montecillo was involved in assessing and managing many of these inmates. Throughout the years I worked with Mrs. Montecillo, I found her clinical skills and judgment to be accurate and reliable. Mrs. Montecillo is one of the most responsible, competent and compassionate registered nurses I have worked with and is someone I had (and have) the highest respect for.

8. While I do not remember exactly what Mrs. Montecillo told me when she called me regarding Mr. Wallace, her practice when she called was to read her chart

Exhibit C
page 2 of 8

*Affidavit of Dr. Meloche*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV (RRB)*

note to me and that is what I believe she did here. I had no hesitation in relying on Mrs. Montecillo's clinical judgment in this situation because of the trust I had developed in working with her for so many years. I reviewed and initialed Mrs. Montecillo's chart note on the morning of 24 July 2004. If I had thought the chart note did not accurately convey what I was told about Mr. Wallace, I would have so indicated.

9. I remember that Mr. Wallace was a 31-year-old man in alcohol withdrawal with no other known adverse health conditions. He had a history of prior alcohol withdrawal. He did not have a fever. He was not vomiting. His blood pressure and pulse were elevated, but not markedly so. He was breathing without difficulty at a rate of 20 respirations per minute. He was sweating and had a tremor. He had some hallucinations and was at times talking without sense, but he was oriented to time and place. He was able to interact with Mrs. Montecillo, was able to drink fluids, take his medication and eat. He was able to participate in his own care.

10. Based on my conversation with Mrs. Montecillo and my years of experience in treating patients undergoing withdrawal from alcohol, I believed it appropriate to place Mr. Wallace on the State of Alaska Department of Corrections Alcohol Withdrawal Protocol. This is a State of Alaska Department of Corrections protocol that was in use at the Ketchikan Correctional Center for the entire time of my employment there. This is a protocol that was approved for use by the State of Alaska Department of Corrections physicians. To my knowledge this protocol is the only such protocol approved for use at the Ketchikan Correctional Center during the time of my employment there.

11. I had given orders for the use of this protocol for inmates at the Ketchikan Correctional Center many, many times during the 10-year period prior to July of 2004. I have used a similar treatment plan for outpatient treatment of alcohol

LESSMEIER & WINTERS
LAWYERS - LLC
VINTAGE BUSINESS PARK
3000 VINTAGE BOULEVARD, SUITE 100
JUNEAU, ALASKA 99801
TELEPHONE (907) 796-4999 • FACSIMILE (907) 796-4998

*Affidavit of Dr. Meloche*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV (RRB)*

Exhibit C
page 3 of 8

withdrawal for virtually the entire time I have been practicing medicine. My practice in using the State of Alaska protocol was to implement the medication schedule called for in the protocol and to then adjust the dosage of medication based on how the inmate responds. In my experience, this protocol has been an extremely effective method of treating alcohol withdrawal. In each instance that I gave an order for the use of this protocol at the Ketchikan Correctional Center the protocol itself was implemented by the Ketchikan Correctional Center registered nurses and correctional officers. I fully expected the protocol to be applied as written unless I gave orders to alter it.

12. Based on what I learned in my conversation with Mrs. Montecillo about Mr. Wallace and my experience in treating patients going through alcohol withdrawal, I gave her a verbal order to institute the State of Alaska Department of Corrections Alcohol Withdrawal Protocol. I made this decision based on my judgment that Mr. Wallace would do well on the protocol because he was young, had no other known adverse health conditions, had no fever, was not vomiting, was oriented to time and place and was able to take food, fluids and medication. I did not believe he was in a state of delirium tremens. I also knew he would be in a cell that was continuously monitored via a video monitor by correctional officers who had experience in monitoring individuals going through alcohol withdrawal and that Mrs. Montecillo would be at the Correctional Center for significant parts of each day to assess his condition. For those times when Mrs. Montecillo was not at the Correctional Center, I knew she was on call.

13. During my conversation with Mrs. Montecillo regarding Mr. Wallace, I asked her to call me if Mr. Wallace did not respond to the protocol or if his condition deteriorated. Mrs. Montecillo said she would do so and in my years of working with her I have found her to be extremely conscientious in providing such followup. I told her my intention would be to hold my weekly clinic at the Correctional Center on

*Affidavit of Dr. Meloche*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV (RRB)*

Exhibit C
page 4 of 8

Page 4 of 8

Saturday, 24 July 2004, and I would see Mr. Wallace then, unless she called me earlier.

14. Based on the conversation I had with Mrs. Montecillo, I did not see the need to see Mr. Wallace earlier, nor did she indicate such a need. I did not see the need to treat him in an impatient setting at the hospital given the information I obtained from Mrs. Montecillo, nor did she indicate she believed there was such a need.

15. The conversation I had with Mrs. Montecillo on the afternoon of 22 July 2004 is the only contact I had relating to Mr. Wallace between the time he entered the Ketchikan Correctional Center and the time of his death, which occurred early on 24 July 2004. During this entire time, I was available by telephone and had there been an attempt to contact me, I would have been aware of that attempt and would have responded immediately.

16. Based on my experience and what I learned about Mr. Wallace from Mrs. Montecillo, I fully expected him to do well on this protocol and to go through alcohol withdrawal without any complications. I did not think there was any significant risk of serious harm to him. If he did not do well on the protocol or if his condition deteriorated I expected to be called, as I had requested. I was available for calls at all relevant times after the 22 July 2004 call from Mrs. Montecillo and my availability further reduced any risk of serious harm to Mr. Wallace. In addition, I knew Mr. Wallace was in a monitored setting under the observation of the correctional officers and under the supervision of Mrs. Montecillo. Because of this monitored setting and my experience at the Correctional Center in similar situations, I believed that in the unlikely event that Mr. Wallace did not respond well to the protocol or his condition deteriorated, I would be promptly notified of any such change and would have the opportunity to respond as I deemed necessary depending on the circumstances as they developed. I did not believe there was any meaningful risk that I would not be so

*Affidavit of Dr. Meloche*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV (RRB)*

Exhibit C
page 5 of 8

notified. For all of these reasons I believed the risk of serious harm to Mr. Wallace under the treatment plan I instituted to be minimal.

17. In my review of Mrs. Montecillo's chart note on the morning of 24 July 2004, I noted that Mrs. Montecillo saw Mr. Wallace at 7:00 a.m. on 23 July 2004, at which time he was given his medication and while he still had tremors, he was noted to be cooperative. He was escorted to the shower without difficulty at 7:10 a.m. At 9:30 a.m. he was examined by Mrs. Montecillo, who noted that while he was still sweating and continued to hallucinate, he was cooperative and his blood pressure and pulse had returned to normal and he was breathing without difficulty at a rate of 20 respirations per minute. He was offered fluids, which he drank without hesitation. It appeared to me when I reviewed this chart on 24 July 2004, and even now, that Mr. Wallace had in fact responded favorably to the protocol. I believe the improvement documented in these chart notes confirms Mr. Wallace was not in delirium tremens when I was called on 22 July 2004. These chart notes also show that Mr. Wallace was not in delirium tremens when Mrs. Montecillo saw him 23 July 2004.

18. In the course of this litigation, I learned for the first time from incident reports prepared by the correctional officers, that Mr. Wallace apparently began to act bizarrely sometime during the evening of 23 July 2004. Mr. Wallace's change in behavior is not something I expected. I was not informed of this change in behavior and apparently, neither was Mrs. Montecillo, as such a change is something I am virtually certain she would have immediately responded to and immediately informed me of.

19. During the time I worked at the Ketchikan Correctional Center, I found the correctional officers to be professional and responsible. Over the years I have been contacted numerous times by the Correctional Center nurses regarding inmate medical issues that were first discovered and reported by the correctional officers.

20. I knew that Mr. Wallace would be monitored by correctional officers

*Affidavit of Dr. Meloche*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV (RRB)*

Exhibit C
page 6 of 8

continuously while he was going through alcohol withdrawal. I also knew these correctional officers would be administering the alcohol withdrawal protocol when Mrs. Montecillo was not present, as they had done for every other inmate who had gone through alcohol withdrawal at the Ketchikan Correctional Center. It was my belief that the protocol would be administered as written, unless I gave an order to change it. It was my experience and belief that the correctional officers would notify Mrs. Montecillo immediately of any change in behavior or any deterioration of an inmate in alcohol withdrawal. Inmates in alcohol withdrawal at the Ketchikan Correctional Center are placed in monitored cells for just this purpose. I did not know or expect that Mr. Wallace's condition would deteriorate as he went through alcohol withdrawal. Nor did I know or expect that I would not be notified of such deterioration.

21. The system of medical care the State of Alaska chose to implement at the Ketchikan Correctional Center during the time I was the contract physician required the correctional officers to notify the on-call registered nurse of any problems affecting the medical well being of an inmate. The registered nurse would then contact me as necessary so I could respond appropriately. It was my experience that the Correctional Center staff competently performed this responsibility. The failure of the staff to report the abnormal behavior of Mr. Wallace on the evening of 23 July 2004 is the first such failure I have experienced.

22. I learned of Mr. Wallace's death by telephone call from Mrs. Montecillo early on 24 July 2004. I was shocked and saddened. In all my years of providing treatment to patients undergoing alcohol withdrawal, to the best of my knowledge none have died while going through alcohol withdrawal. In fact, I do not recall a patient of mine in Mr. Wallace's age range and condition having any significant complications when going through alcohol withdrawal on this or a similar treatment plan.

*Affidavit of Dr. Meloche*
*Walker, Estate of Wallace v. Henderson et al.;*
*Case No. A05-176 CV (RRB)*

Exhibit C
Page 7 of 8

FURTHER YOUR AFFIANT SAYETH NOT.

12-13-2006
Date

_____
Ernest Meloche, M.D.

SUBSCRIBED AND SWORN to before me this 13th day of December, 2006.

_____
Notary Public in and for Alaska
My Commission Expires: 2-14-2007

[Notary Seal: KAY KEY, NOTARY PUBLIC, State of Alaska]

The undersigned hereby certifies that on the ___ of December, 2006, a copy of the foregoing document was electronically served to the following attorneys of record:

Edwin S. Budge, Esq.
Budge & Heipt, PLLC
705 2nd Avenue, #910
Seattle, WA 98104

/s/ Michael L. Lessmeier
0034-078 Aff EM.wpd

LESSMEIER & WINTERS
LAWYERS - LLC
VINTAGE BUSINESS PARK
1000 VINTAGE BOULEVARD, SUITE 100
JUNEAU, ALASKA 99801
TELEPHONE (907) 796-4999 • FACSIMILE (907) 796-4998

Affidavit of Dr. Meloche
Walker, Estate of Wallace v. Henderson et al.;
Case No. A05-176 CV (RRB)

Exhibit C
page 8 of 8

Page 8 of 8